State, ex rel., v. Folk.

STATE, *ex rel.* STANDARD TRUST COMPANY, *v.* REAU E. FOLK, as State Treasurer.

*(Nashville.* December Term, 1910.)

1. **BUILDING AND LOAN ASSOCIATIONS.** Mutuality is their distinguishing characteristic and the essential law of their existence as defined by statutes and decisions.

   Building and loan associations, as created and defined by statute and as defined by judicial decisions, are mutual, and mutuality is their distinguishing characteristic and the essential law of their existence; and the term "building and loan associations," used in the title or caption of a legislative act, will be given the legal significance that attached to such term under the law at the time it was so used, and the term includes associations doing a building and loan business based upon the principle of mutuality between the association and its members, and in which membership is obtained through the ownership of its shares of stock, with equal privileges and opportunities of obtaining loans of its funds granted to every shareholder upon reasonable terms prescribed for the regulation of all members. (*Post, pp.* 121, 123-125.)

   Cases cited and approved: McCauley v. Association, 97 Tenn., 421; Province v. Association, 104 Tenn., 458; Setliff v. Association, 39 S. W., 546.

2. **CONSTITUTIONAL LAW.** New subject of legislation in amendatory act not included in title of amended act, whose title is not enlarged in amendatory act, is unconstitutional.

   The first section of Acts 1897, ch. 126, undertaking to amend Acts 1895, ch. 114, sec 2, by providing that the business of building and loan associations "need not necessarily be mutual," is unconstitutional because it introduces into the original act a new

State, ex rel., v. Folk.

subject of legislation, not within the purview of its title, which provided "for the examination and supervision of building and loan associations," and which is not enlarged in the title of the amendatory act, in violation of the constitutional provision (art. 2, sec. 17) requiring the subject of legislation to be expressed in the title. (*Post, pp.* 122-126.)

Acts cited and construed: Acts 1895, ch. 114, sec. 2; Acts 1897, ch. 126, sec. 1.

Constitution cited and construed: Art. 2, sec. 17.

Cases cited and approved: Hyman v. State, 87 Tenn., 109; Railroad v. Byrne, 119 Tenn., 285.

3. INJUNCTION. Not granted against State treasurer, because it is assumed that the department of government represented by his office will observe the law when it is ascertained.

Where, in a suit by a corporation against the State treasurer, it is determined that a certain statute, under the provisions of which the treasurer claimed the power to exercise jurisdiction over its business, and forbade it to do business in this State until it came within and submitted to the jurisdiction of the office of the such treasurer, is invalid, an injunction will not be granted restraining the treasurer from interfering with the business of the corporation, as it will be assumed by the court that the department of government represented by such officer will observe the law when it is ascertained. (*Post, p.* 126.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

BURKETT & MANSFIELD and CHAMBLISS & CHAMBLISS, for complainant.

ATTORNEY-GENERAL CATES, for defendant.

MR. JUSTICE LANDSDEN delivered the opinion of the Court

It is not necessary to state this case any further than to say that the relator, the Standard Trust Company, is a Delaware corporation, with its principal place of business in the city of Birmingham, Ala., and is engaged in selling to the public what it denominates a "home-purchasing contract." This contract is similar in its terms and conditions to the business ordinarily done by building and loan associations organized under the laws of this State, as defined in section 2 of chapter 114 of the Acts of 1895. But the relation between the relator and purchasers of its contract is not mutual.

The relator filed a copy of its charter with the secretary of state on January 15, 1908, and paid to that official a privilege tax of $150 and a filing fee of $20, and, assuming that this entitled it to transact business in Tennessee, it opened an office in the city of Memphis, and commenced soliciting business. Soon thereafter the defendant, acting under chapter 114, Acts of 1895, as amended by chapter 126, Acts of 1897, sought to and did exercise jurisdiction over the business of the relator, and forbade it to do business in this State until it came within and submitted to the jurisdiction of the office of the defendant, as prescribed by the statutes above mentioned. The relator, after much correspondence with the defendant, filed a petition with him praying that a license be issued to it to do business in this State; but, for reasons not necessary here to be stated, this was refused, and the

relator ordered to cease soliciting business in this State. Thereupon this bill was filed, and, among other things, alleged that chapter 126 of the Acts of 1897, amendatory of chapter 114, Acts of 1895, is unconstitutional and void, because this amendment introduces a new subject of legislation into the original act that is not covered by its title.

Chapter 114, Acts of 1895, is entitled: "An act to provide for the examination and supervision of building and loan associations doing business in the State of Tennessee." Section 2 thereof is as follows: "That the name 'building and loan association' as used in this act, shall include all corporations, societies, organizations or association doing business in this State under a building and loan charter, or engaging in a building and loan business." Chapter 126, Acts of 1897, amended the foregoing section so as to make it read as follows: "That the name of 'building and loan association,' used in this act, shall include all corporations, societies, organizations or associations doing business in this State under a building and loan charter, or engaged in a building and loan business, or engaged in seeking investments from the citizens of the State by selling forms of stock, debentures, certificates, etc., on plans similar to building and loan associations, but which need not necessarily be mutual."

It is conceded that the latter act is amendatory only, although its title is broad enough to include original legislation upon the subject therein indicated. The ques-

tion for determination is whether the amendment to section 2 of the original act of 1895, above set out, introduces into the original act a new subject of legislation, so as to make the amendatory act invalid, as violative of article 2, section 17, of the constitution of this State, which provides as follows: "No bill shall become a law which embraces more than one subject, that subject to be embraced in the title."

We think there can be no doubt but that the substitution of section 1 of the act of 1897 for section 2 of the act of 1895 will make the body of the latter act, when so amended, broader than its caption. Its caption is limited to the examination and supervision of *building and loan associations,* and section 2, as originally passed, defined such associations as those "doing business in this State under a building and loan charter, or engaged in a building and loan business." The amended section extends the provisions of the act so as to include all "corporations, societies, organizations or associations doing business in this State under a building and loan charter, or engaged in seeking investments from citizens of the State by selling forms of stock, debentures, certificates, etc., on plans similar to building and loan associations, but which need not necessarily be mutual."

The distinguishing characteristic of building and loan associations in the law of this State is that they are mutual. In *McCauley* v. *Building & Saving Association,* 97 Tenn., 421, 37 S. W., 212, 35 L. R. A., 244, 56 Am. St. Rep., 813, it is said that: "It is only so far as they serve

these purposes, and are confined to the objects necessarily involved therein, that the acts of building and loan associations fall properly within the powers granted to them. As soon as they transgress their limits, they are acting *ultra vires.*"

In *Province* v. *Bldg. & Loan Ass'n,* 104 Tenn., 458, 58 S. W., 265, it is said: "The theory on which associations like the present are organized, and the rule of law as applied to them by all the cases, is that they are mutual in their character, and the members share in common gains and losses."

"Strict mutuality and equality of benefits and obligations must be kept the groundwork and basis of these associations, and, if they are not so founded, they are not truly building and loan associations entitled to the protection given such associations by the statutes." *McCauley* v. *Building & Saving Association,* supra.

"Membership in a building and loan association is acquired by the ownership of stock." *Setliff* v. *Nashville, etc., Association,* 39 S. W., 546.

The amendment to section 2 of the act of 1895 does not fall within the purview of its title, and there is no attempt in the amendatory act to enlarge the original title. Building and loan associations, as defined by this court, prior to and at the time of the passage of this amendatory act, were based upon the principle of mutuality. Without this feature, they would not be tolerated for one moment. But for the chance that the shareholder has to earn dividends upon his shares to offset inter-

est, fines, and penalties, the courts would have placed such associations under the ban of the law as usurers. Mutuality is the essential law of their being, and to ingraft into an act provided for the examination and supervision of this class of associations an amendment which includes similar associations which are not mutual is to extend the subject of legislation beyond the purview of the title.

The term "building and loan associations," as used in the title of the original act, will be given the legal significance that attached to such term under the law at the time it was employed. This means associations doing a building and loan business based upon the principle of mutuality between the association and its members, and in which membership is obtained through the ownership of its shares, and equal privileges and opportunities of obtaining loans of its funds are granted to every shareholder upon reasonable terms prescribed for the regulation of all members. It is foreign and incongruous to the purpose of the act to inject into it all other corporations, societies, organizations, or associations engaged in seeking investments by selling forms of stock, debentures, or certificates, whether they are mutual or not. *Hyman* v. *State,* 87 Tenn., 109, 9 S. W., 372, 1 L. R. A., 497; *Railroad* v. *Byrne,* 119 Tenn., 285, 104 S. W., 460.

The result is that section 1 of the act of 1897 is unconstitutional and void. It was only by virtue of this amendment that the defendant assumed jurisdiction and

control over the relator, and, of course, the statute under which the defendant was acting having been declared void, it necessarily follows that the relator does not come within the jurisdiction of his office. It was not necessary to grant an injunction restraining the defendant from interfering with the business of the relator, as the court will assume that the department of the government represented by defendant will observe the law when it is ascertained. Other questions raised by the pleadings and discussed by counsel were disposed of orally.