H. E. GOETZ *et al. v.* J. PARNICK SMITH *et al.*\*,

(*Knoxville,* September Term, 1925.)

1. **ACTION.** Where contestants have real interest in integrity of statute, determination of validity of which is sought, declaration is required.

   In controversy under Acts 1923, chapter 29 to determine validity of a statute, where parties before the court have a real interest to deny, and others have a real interest to affirm, the integrity of the act under consideration, a declaration from the court is required. (*Post, p.* 455.)

   Acts cited and construed: Acts 1923, ch. 29; Acts 1925, ch. 343.

   Cases cited and approved: Hodges v. Hamblen County, — Tenn., —; Miller v. Miller, 149 Tenn., 463.

2. **STATUTES.** General provision of first sentence of captions not limited by subsequent details and particulars.

   In determining whether an act is within its caption under Constitution, article 2, section 17, general purpose expressed by first sentence of caption is not limited by subsequent details and particulars; the maxim, *expressio unius exclusio alterius*, being inapplicable. (*Post, pp.* 455-460.)

3. **STATUTES.** Requirement that statutory provisions be within their titles is to be liberally construed.

   Constitution, article 2, section 17, requiring provisions of statutes to be within their titles, is to be construed liberally, and not so as to embarrass legislation and defeat the beneficial purposes for which it was adopted. (*Post, pp.* 455-460.)

4. **STATUTES.** Title need only fairly indicate real object of entire statute.

In determining whether an act is valid as being within its title, if, on analysis of entire statute, its real object can be discovered, and this object is fairly indicated in caption, title is sufficient, and provisions of act germane to object or purpose are not beyond title. (*Post, pp.* 455-460.)

5. **STATUTES.** **Unnecessary recitals in title are surplusage.**

In determining whether an act is within its caption under Constitution, article 2, section 17, unnecessary recitals in title will be disregarded as surplusage. (*Post, pp.* 455-460.)

6. **STATUTES.** **Caption of act for system of county highways held sufficient.**

Private Acts 1925, chapter 343, the caption of which expressed its purpose to be the providing of an efficient system for building and maintaining public roads, bridges, and ferries, *held* not violative of Constitution, article 2, section 17, notwithstanding act provided for appointment of district road commission and filling vacancies in board of highway commissioners and for removal of commissioner for malfeasance and misfeasance, and providing with reference to class of citizens subject to road duty, as well as for condemnation of quarries and borrow pits, which are all merely ways and means of carrying out expressed purpose. (*Post, pp.* 455-460.)

Acts cited and construed: Acts 1925, ch. 343.

Cases cited and approved: Kizer v. State, 140 Tenn., 582; Scott v. Nashville Bridge Co., 143 Tenn., 86; Bell v. Hart, 143 Tenn., 587; State v. Nashville, 141 Tenn., 405; Railroads v. Crider, 91 Tenn., 489; State v. Board of Control, 85 Minn., 165; State v. Atherton, 19 Nev., 332; In re Sugar Notch Borough, 192 Pa., 349.

Constitution cited and construed: Art. 2, sec. 17.

7. **HIGHWAYS.** **Road system act for Knox county held to repeal former act.**

Private Acts 1925, chapter 343, providing for a road system for Knox county, and which covered the entire subject of building, maintenance, and control of county highways, *held* to repeal by implica-

Goetz v. Smith.

tion Private Acts 1917, chapter 739, which covered the same ground. (*Post, pp.* 460-462.)

Acts cited and construed: Acts 1925, ch. 343; Priv. Acts 1917, ch. 739;

8. **HIGHWAYS.** Office of superintendent held legally abolished through repeal by implication of act creating it.

Office of superintendent of roads of county, created under Private Acts 1917, chapter 739, *held* legally abolished on the repeal by implication of the act creating it through passage of Private Acts 1925, chapter 343. (*Post, pp.* 462, 463.)

9. **OFFICERS.** Office holder cannot complain of abolition of office not protected by Constitution.

The holder of an office not protected by the Constitution cannot complain if, in public interest, and by way of putting into effect a new system, the legislature repeals the statute creating it. (*Post, pp.* 462, 463.)

Acts cited and construed: Priv. Acts 1917, ch. 739.

Cases cited and approved: Malone v. Williams, 118 Tenn., 390; House v. Creveling, 147 Tenn., 589; State ex rel. v. Linkus, 136 Tenn., 157; Van Dyke v. Thompson, 136 Tenn., 136.

10. **HIGHWAYS.** Provision in statute for appointment of county elective officers not unconstitutional.

Private Act 1925, chapter 343, establishing board of highway commissioners as elective officers, and providing for the appointment of commissioners until the next general election, *held* not violation of Constitution, article 11, section 17. (*Post, pp.* 463, 464.)

Acts cited and construed: Acts 1911, ch. 237.

Cases cited and approved: Hodge v. State, 135 Tenn., 525; State ex rel. v. Trewhitt, 113 Tenn., 561; Richardson v. Young, 122 Tenn., 471; Condon v. Maloney, 108 Tenn., 82.

Constitution cited and construed: Art. 11, sec. 17.

11. **ACTION.** Objection to portions of statute as being unconstitutional not considered in proceeding under Declaratory Judgment Act, where no party has real interest in those particular provisions.

In a proceeding under Declaratory Judgment Act 1923 to determine the validity of Private Acts 1925, chapter 343, establishing a highway system for Knox county, questions as to whether the provision of taking land for quarries and borrow pits in not providing compensation to owners was violation of Constitution, article 1, sections 8, 21, or whether special privileges conferred on district road superintendent was violative of Constitution, article 11, section, 8, could not be considered, where no one before the court was adversely affected by such provisions of the act, or had any real interest in raising the question which did not go to the act as a whole. (*Post, pp.* 464, 465.)

---

*Headnotes 1. Actions, 1 C. J., Section 68; 2. Statutes, 36 Cyc., pp. 1019, 1122 (Anno); 3. Statutes, 36 Cyc., p. 1018; 4. Statutes, 36 Cyc., p. 1019; 5. Statutes, 36 Cyc., p. 1019; 6. Statutes, 36 Cyc., p. 1038; 7. Highways, 29 C. J., Section 308; 8. Highways, 29 C. J., Section 290; 9. Officers, 29 Cyc., p. 1368; 10. Highways, 29 C. J., Section 290; 11. Actions, 1 C. J., Section 68.

### FROM KNOX.

Appeal from the Circuit Court of Knox County.—Hon. A. C. GRIMM, Judge.

FRANTZ, McCONNELL & SEYMOUR and FRANK M. THOMPSON, for Goetz and others.

J. ALVIN JOHNSON, for J. Parnick Smith.

CHAS. T. CATES, JR., for Geo. M. Trotter.

L. D. SMITH, for J. W. Freeman.

JAS. G. JOHNSON, for Knox County.

. MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

To this controversy, presented under the Declaratory Judgments Act (chapter 29, Acts 1923), the parties are Knox county, the trustee, county judge, and superintendent of roads of Knox county, the Attorney General of the State, and the members of the board of highway commis· sioners, created for Knox county by chapter 343 of the Private Acts of 1925. The questions arising are with reference to the constitutionality of the last named act and certain sections thereof. The trial judge held the act void.

Some doubt is expressed by the attorney-general as to the propriety of a declaration herein. As the case was finally shaped and submitted to the court below, however, we think an expression from the court was required; that is to say, there were parties before the court having a real interest to deny, and parties before the court having a real interest to affirm, the integrity as a whole of chapter 343 of the Private Acts of 1925. *Hodges* v. *Hamblen County,* this day decided; *Miller* v. *Miller,* 149 Tenn., 463, 261 S. W., 965.

The most serious assault made upon chapter 343 of the Acts of 1925 is that the body thereof is broader than the caption, contrary to the provisions of section 17 of article 2 of the Constitution.

The caption of the act is as follows:

"An act to provide an efficient system for laying out, classifying, building, maintaining and repairing the pub·

lic roads, bridges and ferries in this State in counties having a population of not less than 112,000 and not more than 114,000 inhabitants as shown by the federal census of 1920 or any subsequent federal census.  To provide for the levying of taxes to raise funds for said purposes; and providing for the issuance of county warrants on the county trustee in payment for work, material, supplies and other things coming under the provisions of this act.  The management and control of the workhouse and the working of county prisoners on public roads in counties coming under the provisions of this act to create a board of highway commissioners to have charge of the building and repairing of all the highways, roads, bridges, culverts, ferries and other roadway structures in said counties; and providing for the naming of the first board of commissioners in certain counties, in the event they come within the provisions of this act.  And providing for the election of all boards of highways commission thereafter, from the county at large at the regular county election; and providing for the condemnation of rights of way for such road purposes; and providing for the anticipation of the July budget of such counties; and providing for the appointment of a county superintendent of roads, a county superintendent of the workhouse, a county road engineer and other employees, and providing for the assistance of the county attorney in the carrying out of the provisions of this act.''

The act is quite lengthy, containing 29 sections, and it would serve no purpose here to set it out or undertake a statement of all its provisions.  Generally speaking, it undertakes to ordain a system for laying out, building, and maintaining the roads, bridges, and ferries in Knox

county, through a board of highway commissioners, and confers certain powers, and imposes certain duties, upon said commissioners, and contains other germane matter.

It will be observed that the purpose of the act, as indicated in the first sentence of the title, is "to provide an efficient system" for building and maintaining the public roads, bridges, and ferries. In the remainder of the title certain details and particulars of the proposed system are set out, such as levying taxes, management of the workhouse, creation of a board of highway commissioners, etc.

The argument made against the act is that the general words of the first sentence of the caption are limited by the details and particulars of the remainder of the caption; that is, the title should be rendered as though it read an act to set up an efficient system by providing for, or by the adoption of, the particular means and instrumentalities then stated. It is insisted that no other means or instrumentalities could properly be embraced in the body of the act except those specifically named in the caption.

The maxim, *expressio unius exclusio alterius,* is invoked. This maxim embodies a useful rule of construction, and is frequently employed to determine the real purview of legislative enactments. We have no case, however, in which the rule has been applied to restrict the title of an act, which title contains a general statement of the purposes of the act.

Section 17 of article 2 of the Constitution is, of course, to be construed liberally, and not so as to embarrass legislation and defeat the beneficial purpose for which it was adopted. *Kizer* v. *State,* 140 Tenn., 582, 205 S. W.,

423; *Scott* v. *Nashville Bridge Co.,* 143 Tenn., 86, 223 S. W., 844.

From a review of our decisions, it appears, if, upon analysis of the entire statute, its real object or purpose can be discovered, and this object or purpose is fairly indicated in the caption, the title is sufficient. If the various provisions of the act are germane to the object or purpose so discovered and indicated, they are not beyond the title. *Bell* v. *Hart,* 143 Tenn., 587, 223 S. W., 996.

It seems rather plain, from an examination of chapter 343 of the Private Acts of 1925, that its object and purpose is to provide what the legislature deemed an efficient highway system for Knox county. This purpose is not merely indicated in the caption, but is expressed in as many words.

Unnecessary recitals in the title of an act are commonly disregarded as surplusage. *State* v. *Nashville,* 141 Tenn., 405, 210 S. W. 649; *Railroads* v. *Crider,* 91 Tenn., 489, 19 S. W., 618. The purpose of this act having been discovered, and that purpose appearing in the caption, other matter in the caption, provided it is not incongruous, may be brushed aside.

Most of the States have constitutional provisions similar to section 17 of article 2 of the Constitution of Tennessee. The precise argument made against the act under consideration has been advanced and rejected in other jurisdictions.

"Every reasonable presumption should be in favor of the title, which should be more liberally construed than the body of the law giving to the general words in such

title paramount weight." *State* v. *Board of Control*, 85 Minn., 165, 88 N. W., 533.

"Where the title expresses a general subject, and also details or particulars, the legislature is not limited to the particulars or details specified, but may enact any provision germane to the general title, unless the title is so worded as to show a clear intent to confine the act to the particulars mentioned." Lewis' Sutherland Stat. Cons., section 132; *State* v. *Atherton,* 19 Nev., 332, 10 P., 901.

"Where a general title, sufficient to cover all the provisions of an act, is followed by specifications of the particular branches of the subject with which it purposes to deal, the scope of the act is not limited nor the validity of the title impaired except as to such portions of the general subject as legislators and others would naturally and reasonably be led by the qualifying words to suppose would not be affected by the act. This is the rule established by all our cases. It is an application of the maxim *expressio unius exclusio alterius.* The express enumeration of the specific subjects must be affirmatively misleading as to the intent to exclude others, or the title will not be made invalid by it." *In re Sugar Notch Borough,* 192 Pa., 349, 43 A., 985.

The *general* purpose of the act before us so clearly appears from its inspection as a whole, and this *general* purpose is so plainly expressed in the title, we do not think that the enumeration of certain details and particulars in the caption was at all misleading or was effective to limit the scope of the act:

Things in the act said to be outside the title are a provision for the appointment of district road commission-

ers, a provision for filling vacancies in the board of highway commissioners, a provision for the removal of such commissioners for malfeasance or misfeasance, a provision with reference to the class of citizens subject to road duty, and a provision for the condemnation of quarries and borrow pits. All these things seem but ways and means of ''an efficient system for laying out, classifying, building, maintaining, and repairing the public roads, bridges, and ferries.''

Prior to the adoption of chapter 343 of the Private Acts of 1925, the road system of Knox county was carried on under the provision of chapter 739 of the Private Acts of 1917. Both these acts undertook to, and did, we think, cover the entire subject of the building, maintenance, and control of the highways of Knox county.

Chapter 739 of the Private Acts of 1917 was likewise quite elaborate, and we cannot undertake to set it out. Under that act control of the highways was lodged in a general superintendent of public roads. In his expenditures, this general superintendent was subjected to some supervision by the county judge and by the quarterly county court, but otherwise he was in real charge of affairs, and a superintendent in fact as well as in name.

While chapter 343 of the Acts of 1925 provides for the appointment of a county superintendent of roads, actual control of the highways is placed in the hands of the board of highway commissioners. The county superintendent of roads contemplated by the last act is given no real power. He can do little or nothing on his own responsibility, but is subjected in almost every detail of his work to the orders of the board of highway commissioners. He is not a superintendent in fact, but at most

only a sort of inspector, who must observe, report, and get orders.

It should be noted, too, that in their expenditures the board of highway commissioners created by the last act are not subject to the veto of the county judge, but section 16 of the act expressly provides that—"'In case of absence, sickness or refusal on the part of the county judge to issue warrants when approved by the board, the board of highway commissioners by a vote of three members of said board may designate one of said commissioners to issue said warrant or warrants against the road funds in the hands of the trustee. . . . ''

It is obvious, from the comparison of chapter 739 of the Private Acts of 1917, and chapter 343 of the Private Acts of 1925, that the latter act covers the whole ground of the earlier, and accomplishes a repeal by implication. The system ordained by the last act is new and altogether inconsistent with the system that prevailed under the first act. The earlier system put in charge a general superintendent, with full control, only supervised in his expenditures by the county judge and the quarterly county court. The later system put in charge a board of highway commissioners, with an underling for road superintendent, subject to their orders, and to the board of highway commissioners is given paramount authority in the matter of expenditures.

Chapter 343 of the Private Acts of 1925, in section 12, provides that the board of highway commissioners shall elect a superintendent of roads, and that they shall elect as the first superintendent under the act the person entitled to the office of superintendent of roads as now pro-

vided by law. This we understand the board of highway commissioners undertook to do.

The superintendent of roads, holding under chapter 739 of the Private Acts of 1917, complains that he has been unlawfully deprived of his office under the doctrine of *Malone* v. *Williams,* 118 Tenn., 390, 103 S. W., 798, 121 Am. St. Rep., 1002, and insists that the act before us is unconstitutional for that reason.

We think it quite true that the superintendent of roads under the earlier act has been deprived of his office. As pointed out, the office of superintendent of roads under the act of 1925 is a very different thing from the office of superintendent of roads under the act of 1917. Another difference not mentioned is that under the first act the superintendent of roads was elected by the people for four years, while under the last act he is elected by the board of highway commissioners, and holds office at the pleasure of such board.

Although deprived of his office, the superintendent of roads under the former act was not illegally deprived thereof. Chapter 739 of the Private Acts of 1917, as above stated, has been repealed by implication, and the offices created by that act go down with the act. Repeals by implication are not favored, but, when they are brought about, they are practically equivalent to express repeals, at least during the prevalence of the later inconsistent act.

It cannot at this time be contended that an office holder may complain, if, in the public interest, and by way of putting into effect a new system, the legislature repeals statutes, the effect of which is to abolish offices not protected by the Constitution. *House* v. *Creveling,* 147

Tenn., 589, 250 S. W., 357; *State ex rel.* v. *Linkus,* 136 Tenn., 157, 189 S. W., 67; *Van Dyke* v. *Thompson,* 136 Tenn., 136, 189 S. W., 62.

If the superintendent of roads under the act of 1917 accepts appointment as superintendent of roads under the act of 1925, although the name is the same, he takes an entirely different office. The old office does not now exist.

It is insisted that the act under consideration is invalid because the board of highway commissioners thereby created are elective officers, and that the provision for their appointment and the provision by which they themselves may fill a vacancy in their board are both unconstitutional. The act itself names the first board to serve until the first regular biennial election following, when their successors shall be elected for a period of four years and thereafter said board is to be elected every four years from the county at large. In case of a vacancy, it is provided that the vacancy shall be filled by the remaining members of the board.

The argument is that the board of election commissioners are county officers, and that the act violates section 17 of article 11 of the Constitution to the effect that "no county office created by the Legislature shall be filled otherwise than by the people or the county court."

Notwithstanding this constitutional provision, it is perfectly well settled that—"The legislature, upon creating a new county office or State office, may provide for the filling of such office by appointment until the next general election." *Hodge* v. *State,* 135 Tenn., 525, 188 S. W., 203; *State ex rel.* v. *Trewhitt,* 113 Tenn., 561, 82 S. E., 480; *Richardson* v. *Young,* 122 Tenn., 471, 125 S. W., 664; *Condon* v. *Maloney,* 108 Tenn., 82, 65 S. W., 871.

These cases take no distinction between a State office and a county office in this particular.

As to filling vacancies in the commission, chapter 237 of the Acts of 1911, creating a board of county commissioners for Shelby county, contained the following: "That upon any vacancy occurring in the board of commissioners by death, resignation, removal, or otherwise, then the remaining commissioners shall have the power to elect a commissioner to fill such vacancy, who shall hold office during the unexpired term." Section 16, Id.

This provision of the Shelby county act was expressly upheld by the court in *Prescott* v. *Duncan,* 126 Tenn., 106, 147, 148 S. W., 229. It was adjudged to be authorized by section 4 of article 7 of the Constitution that—"The elec tion of all officers and the filling of all vacancies not otherwise directed or provided by this constitution shall be made in such manner as the legislature shall direct."

It was said that this section, and section 17, article 11, of the Constitution, must be construed together so that both might stand.

We find no material difference between the provision for filling vacancies in the act before us and the provision for filling vacancies in the Shelby county act. The commissions created by each act are alike county officers with four-year terms. This ruling in *Prescott* v. *Duncan,* cannot now be disturbed. It has been repeatedly accepted by the legislature as the law and other statutes establishing county boards and commissioners based upon it.

Certain other constitutional objections are urged to the act, in that it does not provide for compensation to the owners of land taken for quarries and borrow pits as it should under sections 8 and 21 of article 1 of the

Goetz v. Smith.

Constitution, and in that special rights and privileges are conferred on district road superintendents in Knox county who are allowed to take contracts for work over which they have charge, while the general laws of the State forbid any such favors to other public officials. This is said to be in violation of section 8 of article 11 of the Constitution.

The last objections do not go to the act as a whole. If, in a proper case, such objections were adjudged well taken, the sections of the act so offending could easily be elided. In the present litigation there is no one before the court adversely affected by such provisions of the act, and no one who has any real interest to raise such questions under the Declaratory Judgments Statute. A declaration upon these matters will, therefore, not be made.

We are of opinion that the court below erred in holding chapter 343 of the Private Acts of 1925 unconstitutional, and his judgment to this effect must be reversed. It may be that certain provisions of the act are invalid, but we find nothing that goes to its integrity as a whole, and it is so declared. Tax all costs to Knox county.